THE STATE OF NEBRASKA, EX REL. OTOE COUNTY, v. HERMAN A. BABCOCK, AUDITOR OF PUBLIC ACCOUNTS.

1. County: REFUNDING INDEBTEDNESS: BONDS. On the 7th day of October, 1880, the county commissioners of Otoe county submitted to the voters of said county the proposition to issue the coupon bonds of said county for the purpose of refunding the bonded indebtedness of said county, and called a special election, for the purpose of voting thereon, said election to be held on the second day of November following. At that time the commissioners had no authority to submit such proposition, nor to call such election. *Held,* That the vote adopting said proposition was without legal effect.

2. ———: ———: ———: REGISTRATION. It is not the duty of the auditor of state to register or certify bonds issued by virtue of such election, and a writ of mandamus will not issue to require him to do so.

ORIGINAL application for mandamus.

*John C. Watson, Frank T. Ransom, George D. Scofield,* and *Webster & Holmes,* for relator.

*William Leese, Attorney General,* for respondent.

REESE, CH. J.

This is an application for a peremptory writ of mandamus to the auditor of state, to require him to register and certify certain refunding bonds issued by Otoe county, bearing date January 1, 1881, to the amount of $82,000. The bonds were issued pursuant to a vote of the people of that county at an election held on the 2d day of November, 1880, for the purpose of refunding certain bonds issued to the Midland Pacific Railway Company, dated April 1, 1868. It is conceded that the bonds of 1868 are legal and constitute a valid obligation against the county, but it is insisted that there was no authority for issuing the bonds now in question at the time the election was held in 1880, and in support of this contention we are cited to section 132, Ch. 18, Compiled Statutes of 1881, together with the act amendatory thereof, passed in 1883. Laws 1883, 191. It is said that the county commissioners acted under the provisions of the prior act, and that said section (132) gave them no authority to call the election, and the whole proceeding was, therefore, void. It is not claimed by relator that the bonds were issued under the provisions of sections 11, 12, and 13 of chapter 45, Compiled Statutes of 1881, or that the action of the county was for an exchange of bonds as therein provided, but it is said in the petition that the election was had under the provisions of section 26 and following of an act entitled, "An act concerning counties and county officers," approved the first day of May, 1879. (Laws 179, p. 363.) The sections referred to are numbered 26, 27, 28, 29, 30, and 31, which we here copy in full:

"SEC. 26. Whenever the county board shall deem it necessary to assess taxes, the aggregate of which shall exceed the rate of one dollar and fifty cents on one hundred dollars valuation of the property of the county, except when such excess is to be used for the payment of indebt-

edness existing at the adoption of the constitution, the
county board may, by an order entered of record, set forth
substantially the amount of such excess required, and the
purpose for which the same will be required, and if for the
payment of interest or principal, or both, upon bonds,
shall in a general way designate the bonds and specify the
number of years such excess will be required to be levied,
and provide for the submission of the question of assessing
the additional rate required to a vote of the people of the
county at the next election for county officers, after the
adoption of the resolution.   If the proposition for such
additional tax be carried, the same shall be paid in money,
and in no other manner.

" Sec. 27.   The mode of submitting the question to the
people for any purpose authorized by law, shall be as fol-
lows:   The whole question, including the sum desired to be
raised, or the amount of the tax desired to be levied, or the
rate per annum, and the whole regulation, including the
time of its taking effect, or having operation, if it be of a
nature to be set forth, and the penalty of its violation, if
there be one, is to be published for four weeks in some
newspaper published in the county.   If there be no such
newspaper, the publication is to be made by being posted
up in at least one of the most public places in each election
precinct in the county, and in all cases the notice shall
name the time when such question will be voted upon, and
the form in which the question shall be taken, and a copy
of the question submitted shall be posted up at each place
of voting during the day of election.

" Sec. 28.   When the question submitted involves the
borrowing or expenditure of money, or issuance of bonds,
the proposition of the question must be accompanied by
a provision to levy a tax annually for the payment of
interest, if any, thereof, and no vote adopting the question
proposed shall be valid unless it likewise adopt the amount
of tax to be levied to meet the liability incurred.

"Sec. 29. At the time specified in such notice, a vote of the qualified electors shall be taken in each precinct, at the place designated in such notice. The votes shall be received, and returns thereof made, and the same shall be canvassed by the same officers and in the same manner as required at each general election.

"Sec. 30. If it appears that two-thirds of the votes cast are in favor of the proposition, and the requirements of the law have been fully complied with, the same shall be entered at large by the county board upon the book containing the record of their proceedings, and they shall then have power to levy and collect the special tax in the same manner that the other county taxes are collected. Propositions thus acted upon cannot be rescinded by the county board.

"Sec. 31. Money raised by the county board in pursuance to the provisions of the preceding sections of this act, is especially appropriated and constituted a fund, distinct from all others, in the hands of the county treasurer until the obligation assumed be discharged."

As will be seen, the sections referred to give no authority to the county commissioners to refund the bonded indebtedness of the county, but, so far as section 26 is concerned, it provides a method for the assessment of taxes, exceeding one dollar and fifty cents per one hundred dollars valuation of the property of the county. In such case, except the excess is to be used in the payment of indebtedness existing at the time of the adoption of the constitution, the question of the additional levy must be submitted to, and adopted by, the people, at an election held for that purpose.

Section 28 is the only one which could be claimed as giving authority for the election referred to. This section is substantially the same as section 19 of chapter 13 of the General Statutes of 1873, and we think can only be held to be a regulation prescribing the form of submitting ques-

tions to the voters, rather than a grant of authority to submit and vote upon the questions there named. We do not think the sections quoted confer the authority claimed for them. We are the more strongly of this opinion, since by chapter 59 of the laws of 1885—Laws 1885, 270— ample provision seems to have been made for refunding bonds at a lower rate of interest, and by which act sections 11, 12, and 13 of chapter 45 of the Compiled Statutes of 1881 are repealed.

There being no law, at the time the election was held, conferring upon the commissioners of Otoe county authority to call the election referred to, no new right was conferred thereby, and the auditor was justified in withholding his certificate from the bonds.

The writ must therefore be denied.

WRIT DENIED.

THE other judges concur.