## DEYO v. OTOE COUNTY.

### (*Circuit Court, D. Nebraska.* January 2, 1889.)

1. RAILROAD COMPANIES — MUNICIPAL AID — VALIDATING ACTS — LEGISLATIVE POWER.

    Municipal bonds issued without authority of law, and therefore void, may be validated by an act of the legislature passed for that purpose, if the legislature of the state could authorize the issuing of similar bonds. The bonds sued on in this case, though void when issued, for want of authority to issue them, were made valid obligations of the county by a curative act of the legislature of the state on the 15th day of February, 1869.

2. SAME—SURRENDER OF BONDS FOR NEW ISSUE.

    If the holder of valid municipal bonds, such as the ones which form the basis of this suit, surrenders them to the municipality, and receives in exchange therefor other bonds which the municipality had not the lawful right to issue, he is not thereby divested of his title to the bonds so surrendered; and such owner and holder of the bonds so surrendered may maintain an action thereon after the same matures.

(*Syllabus by the Court.*)

At Law. Action on county bonds.

*Watson & Scofield,* for plaintiff.

*D. T. Hayden* and *Montgomery & Jeffrey,* for defendant.

DUNDY, J. This suit is based upon several bonds issued by Otoe county, aggregating the sum of $5,000. The bonds were originally issued to the Midland Pacific Railway Company, a railroad corporation organized under the laws of this state. The bonds bear date the 1st day of April, 1868, and matured the 1st day of April, 1888. These bonds are but a small portion of those issued at the same time, and under the same alleged authority. The bonds were issued by the county commissioners of the county, after a vote of the people of the county seemed to authorize the issue, and by virtue of the said vote and the orders made by the commissioners pursuant thereto. The bonds had been put on the market by the railroad company, and had mostly passed into the hands of innocent holders. But the rightful authority to issue the bonds was soon questioned, and the legislature interposed for the purpose of validating the bonds. On the 15th day of February, 1869, the legislature passed an act to enable counties, cities, and precincts to issue bonds, etc., and to legalize bonds already issued. The eighth section of that act is as follows:

"All bonds heretofore voted and issued by any county or city in this state to aid in the construction of any railroad, or other work of internal improvement, are hereby declared to be legal and valid, and a lien upon all the taxable

property in such county or city, notwithstanding any defect or irregularity in the submission of the question to a vote of the people, or in taking the vote, or in the execution of the bonds, and notwithstanding the same may not have been voted upon, executed, or issued in conformity with law; and such bonds shall have the same legal validity and binding force as if they had been legally authorized, voted upon, and executed: provided," etc.

This section seems to apply to all bonds voted and issued in the several counties and cities in the state except Nemaha county, which is specially named in the proviso. The county paid the interest on the bonds until a short time before the suit was instituted, and it is claimed is still willing to pay both interest and principal, except for a supposed legal impediment which seems to be in the way of doing so. The holders of these bonds were willing to receive in exchange from the county refunding bonds, drawing a lower rate of interest, and having a long time to run. This willingness led to an arrangement between the holders and the county, that was mutually satisfactory. Consequently, on the 2d November, 1880, an election was had in the county for the purpose of voting on the proposition to refund the bonded indebtedness. The vote was favorable to refunding, and on the 1st January following refunding bonds were issued in lieu of the ones in suit. But in order to give life and validity to such bonds, so as to make them valid and negotiable, it was necessary to have them registered and certified by the state auditor. This indispensable requisite was never complied with. The auditor declined to certify that the bonds were legally and properly issued; whereupon Otoe county commenced proceedings in the supreme court of the state to compel the auditor to certify and register the bonds as required by law. The supreme court, after full hearing on the merits of the controversy, declined to issue the *mandamus* prayed for, and held the refunding bonds void for the want of authority in the county commissioners to call an election, or to issue such bonds. *Otoe Co.* v. *Babcock*, 23 Neb. 802, 37 N. W. Rep. 645. After all this, the plaintiff offers to surrender to the county the refunding bonds so declared to be void, and demands the return of the valid ones, which he had delivered to the county in exchange for the worthless refunding bonds. This demand was not complied with for reasons unnecessary to state, nor would the county pay the money alleged to be due on the valid bonds, though often requested, etc.; hence this suit. The admitted facts were reduced to writing, a jury was duly waived, and the cause submitted to the court. The facts were about as the same are detailed herein.

It may be conceded, for all purposes connected with this controversy, that the bonds originally issued, and on which this suit is based, were void from their very inception, for want of authority to issue them. It must be conceded, also, that the eighth section of the act of the state legislature before quoted, was an attempt made to cure the want of authority to issue the bonds, and was really and in fact intended to give life and vitality to a dead or void bond. If the legislature of a state has the constitutional right to do this, then the original infirmity which tainted these bonds has been completely overcome. Counsel for the county

strenuously contend that the legislature has no such right, and when it attempted to arrogate to itself any such right or authority, it transcended its legitimate constitutional authority. This is a pleasing view to take of legislative functions, especially by a strict constructionist, as I am supposed to be; but unfortunately for those who rely on that in this case, the supreme court of the United States has had under consideration this very eighth section, and has held that the legislature had the constitutional right to pass it, and that bonds voted and issued without authority before its passage were validated and binding after the same became a law. See *Otoe Co.* v. *Baldwin*, 111 U. S. 1, 4 Sup. Ct. Rep. 265. After such an authoritative exposition of the law, there is no room left for argument thereon in this court. We will therefore now and hereafter treat this question as no longer open to dispute.

Again, it is claimed that because the plaintiff exchanged his valid original bonds for the refunding bonds that no action can be maintained until the latter bonds mature. Defendant's counsel insist that the refunding bonds are valid, subsisting obligations, and, as the plaintiff received them in exchange for the others, he cannot now maintain this action. That claim would be difficult to meet and answer if the refunding bonds were valid. But are they valid? The highest court in this state has pronounced against their validity, and that, too, in a case before it in which Otoe county was a party. *Otoe Co.* v. *Babcock, supra.* Notwithstanding this decision it is claimed that the case was not well considered, and that the law of the state then under consideration is the other way, and I am asked to disregard the decision. It may be that the decision is open to criticism, as counsel claim. However that may be, it is a sufficient reply to say that the federal courts usually follow the interpretation put on state laws by the highest courts of the states, and there is no necessity or inclination to depart from the general rule in considering this case. It must, then, be here held that the refunding bonds received by plaintiff in exchange for his valid ones were void and worthless obligations, and that the plaintiff, by his act of surrender or exchange, did not alienate his title to the original bonds, notwithstanding they are not under his absolute control.

The remaining question relates to the right of the plaintiff to bring and maintain his suit when not in the actual possession of the bonds on which he sues. This question, it seems to me, does not present any serious difficulty. The bonds were certainly issued, and came to the plaintiff in due course of business. He was the owner of the same at the time of the exchange. He received interest on the same for many years. There is no question about their identity or ownership. When he surrendered them to the county he received some worthless paper, and nothing else. The consideration for the exchange was a total failure. The county ought to have placed the plaintiff where he was before the exchange; and in legal contemplation, the title of the plaintiff to the bonds in suit was never divested. He is still in a position to sue and maintain suit on the bonds. The supreme court of the state had this same question before it, and the right to maintain the suit was upheld. *Platts-*

*mouth* v. *Fitzgerald*, 10 Neb. 401, 6 N. W. Rep. 470. The views here expressed entitle the plaintiff to a judgment for the amount claimed, and judgment will accordingly be entered, on plaintiff filing with the clerk of the court the refunding bonds in his possession, hereby held to be invalid.