RODGERS et al. v. THOMAS.

(Circuit Court of Appeals, Eighth Circuit. November 24, 1911.)

No. 3,432.

1. WATERS AND WATER COURSES (§ 230*)—BONDS OF IRRIGATION DISTRICT—SUIT FOR CANCELLATION—ESTOPPEL.

Where an irrigation district organized under the laws of a state and expressly authorized to issue bonds, sell the same to the highest bidder after advertisement, and to use the proceeds for the construction of irrigation works, issued bonds which it had voted at par directly to a contractor in payment for work which he had performed, its action was at most no more than an irregular exercise of its power, and, where neither the district nor any taxpayer questioned the validity of the bonds until eight years after their issuance and after the right of the contractor to maintain an action at law to recover for his work was barred by limita-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion, a subsequent purchaser of property in the district cannot then maintain a suit to have them declared void because of such irregularity.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 230.*]

**2. EQUITY (§ 87*)—LACHES—FOLLOWING STATUTE OF LIMITATIONS.**

Courts of equity in cases of concurrent jurisdiction usually consider themselves bound by the statute of limitations which governs courts of law in like cases, and this rather in obedience to the statute than by analogy.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 242–244; Dec. Dig. § 87.*]

Appeal from the Circuit Court of the United States for the District of Nebraska.

Suit in equity by William H. Thomas against Elizabeth O. Rodgers and others. Decree for complainant, and defendants appeal. Reversed.

H. C. Brome (A. H. Burnett and Clinton Brome, on the brief), for appellants.

W. D. McHugh, for appellee.

Before HOOK and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. It is sought by the bill in this case to have certain bonds issued by an irrigation district declared void and to enjoin the collection of assessments made upon lands within the district for the purpose of paying the bonds and the interest thereon.

[1] The Circuit Court held the bonds to be void, and ordered their cancellation. It appears from the record that the Alfalfa Irrigation District was organized in 1895, and, as authorized by the laws of Nebraska, bonds were voted and issued by the district in the sum of $22,000 for the purpose of providing a system of irrigation for lands lying within the district. The Irrigation District was organized under an act of the Legislature of the state of Nebraska which took effect March 26, 1895 (Laws 1895, c. 70). By certain allegations of the bill it was sought to question the validity of the proceedings by which the irrigation district was created and the validity of the election at which the bonds were voted; but the Circuit Court found against the complainant with respect to all these matters and they need not be further noticed.

Section 13 of the irrigation act under which these bonds were issued authorizes the board of directors of the district, after the district is organized, to estimate and determine the amount of money necessary to be raised for the construction of ditches, dams, reservoirs, and works for irrigation purposes within the district, and to issue bonds therefor, having first submitted the question of whether or not bonds should be issued to the qualified electors of the district. Section 14 authorizes the board to sell the bonds from time to time in such quantities as may be necessary to raise money for the construction of canals and works, the acquisition of property and rights,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and otherwise to further carry out the object and purposes of the act. It is further provided that, before making a sale of the bonds, the board shall give notice of the sale by publication thereof at least 20 days in a daily newspaper published in each of the cities of Omaha and Lincoln, and in any other newspaper at their discretion. The act further provides that at the time appointed the board shall open the proposals received pursuant to the notice, and award the purchase of the bonds to the highest responsible bidder, provided that in no event shall any of the bonds be sold for less than 95 per cent. of their face value. Section 15 provides that the bonds and interest shall be paid by revenue derived from an annual assessment upon the real property of the district. Section 24 provides that the costs and expenses of purchasing and acquiring property and constructing the works and improvements thereon provided for shall be wholly paid out of the construction fund. The bill alleges that the bonds were issued without authority for the reason that the statute contemplates they should be sold for cash and a construction fund created out of which fund all expenses for construction and materials should be paid, whereas in this case bonds were issued direct to the parties constructing the works, and therefore the bonds are void.

It is denied in the answer that the contract with the Rodgers provided that the price to be paid for construction should be paid in bonds; but, on the contrary, it is alleged that the contract required that the price of construction should be paid in money. Several other matters are pleaded in defense in the answer, among them the statute of limitations.

The bonds in controversy were all dated July 1, 1896, and between the 8th day of November, 1896, and the 1st day of July, 1897, bonds to the amount of $14,400 were delivered to W. O. Rodgers, one of the contractors. On the 10th day of March, 1898, W. O. Rodgers died, leaving a will, under which the defendants, Elizabeth O. Rodgers, wife of W. O. Rodgers, Erwin F. Rodgers, and Hazel D. Rodgers, children of W. O. Rodgers and Elizabeth O. Rodgers, became the owners of the bonds delivered to W. O. Rodgers. Between the 28th day of April, 1898, and the 28th day of March, 1899, bonds to the amount of $3,100 were delivered to Elizabeth O. Rodgers under a contract for the construction of certain additional works not included in the contract with W. O. Rodgers. Other bonds to the amount of $4,500 were delivered to other parties, but as the decree was in favor of all the bondholders except the appellants, Mrs. Rodgers and her children, they require no consideration.

The bill of complaint in this suit was filed in the Circuit Court by William H. Thomas, a citizen of the state of Iowa and a taxpayer in Keith county, Neb., on the 4th day of September, 1906, making. Keith county, its treasurer, the board of county commissioners, all of the bondholders, the board of directors, and the Alfalfa Irrigation District parties to the bill. The appellants and the Irrigation District only filed answers. No reference need be made to the answer of the Irrigation District as it did not appeal from the decree. The record shows that the lands mentioned in the bill were

purchased by the appellee from one M. S. Collins on the 14th day of July, 1906, nine years after the bonds had been delivered to W. O. Rodgers and more than seven years after the bonds were delivered to Elizabeth O. Rodgers under their contracts. During all of this time Collins, the then owner of the lands mentioned in the bill, as well as all other landowners in the district, assented to and acquiesced in the construction of the irrigation ditch, the sale of the bonds, accepted the benefits to their lands arising from the construction of the works, Collins being, as the record shows, the first man to take water from the ditch and apply it to his land. In addition to this, the record further shows that for three years he was an officer of the Irrigation District, and necessarily was thoroughly familiar with the entire transaction. During all of that time the validity of the bonds was not questioned by the Irrigation District or by any taxpayer therein. Neither is it suggested in the pleadings that the price agreed to be paid for the work was excessive, or that there was any failure to complete the project in compliance with the terms of the contract between Rodgers and the Irrigation District.

It is quite true the record shows that on the 21st of August, 1896, W. O. Rodgers, pursuant to an advertisement for bids for construction, submitted a bid to do the excavation work upon the canal, in which he stated that he would do the work for 6½ cents per cubic yard payable in cash, or for 8 cents per cubic yard payable in the bonds of the district, and the minutes of the board show that the bid was accepted generally, without specifying whether the payments were to be made in money or bonds. After an advertisement for bids for the sale of bonds and no bids having been received the Irrigation District on September 18, 1896, entered into a contract with Rodgers for the construction of the irrigation works, wherein the Irrigation District agreed to pay eight cents per cubic yard for the excavation, and no reference is made to the bid nor is there any provision in the contract requiring the district to give, or Rodgers to accept, bonds in payment, so that upon the face of the contract the payments were to be made in cash. The record shows, however, that the payments were made in bonds, he taking the bonds at par value. From the fact that in the bid Rodgers offered to do the work for eight cents per cubic yard payable in bonds, and that the contract provided for the payment of eight cents per cubic yard, and the further fact that bonds were delivered in payment for the work done under the contract, it is insisted that it affirmatively appears from the record that the board of directors accepted the second proposition contained in the bid, and that the contract must be read as though that provision was contained therein, and, further, that, as a construction fund was not created by the sale of the bonds of the district for cash in the manner contemplated by the statute, the bonds are void.

The case of City of Ft. Scott, Kan., v. W. G. Eads Brokerage Co., 117 Fed. 51, 54 C. C. A. 437, is called to our attention, and is relied upon as a case in support of this proposition. That was a suit at law to recover compensation for personal services under a contract between the brokerage company and the city. The city at the time

the contract was made had a bonded debt in the sum of $234,000, and a sinking fund of $45,000. The bonded debt was drawing 6 per cent. per annum and sinking fund 1½ per cent. per annum, and the city entered into a contract with the brokerage company to purchase $40,000 of the outstanding bonds, and agreed to pay the brokerage company one-half of the net saving resulting to it from the purchases. At the time the contract was made, by mutual mistake it was supposed that none of the bonds of the city were redeemable, although subsequent thereto it was discovered that $20,000 of the bonds were then payable when called. The brokerage company never bought any of the bonds of the city under their contract, but did incur certain traveling expenses of its officers and agents and rendered services in searching out bondholders of the city bonds and in endeavoring to obtain their bonds, and it was alleged that its services and expenses amounted to $4,275. The city had no power under the statutes of Kansas to make such a contract. The statute made it the duty of the city treasurer to collect and keep invested the sinking fund and to redeem the outstanding bonds of the city, and this court very properly held that, as the city was without power to make any contract to employ or pay any one for purchasing or procuring bonds for the investment of its sinking fund, it was equally without power to make a valid agreement of compromise or to settle a claim founded on such an agreement. The distinction between such a case and a case where a granted power is imperfectly or improperly executed is at once apparent. In that case not only was there no power granted to make such a contract, but, on the other hand, by the express provision of the statute it was made the duty of the city treasurer to do just the thing which the city contracted with the brokerage company to do.

In the case before us the irrigation district was expressly authorized by law to organize as an irrigation district and to issue bonds, and with the proceeds of the sale thereof pay for the construction of irrigation works, so that it is not a case of the total want of power for, as already suggested, it is expressly authorized by the statute to organize and to issue bonds and to enter into contracts for the construction of irrigation works. Therefore the case falls, we think, more nearly within the principle announced in the case of Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659. That was a case where the city entered into a contract with Hitchcock and another for the construction of certain sidewalks, and agreed to pay therefor in the bonds of the city at their par value. The city was authorized by its charter to construct sidewalks, and to charge the cost of construction to the abutting lot owners. After the completion of the work the city council declared the contract void and the contractor brought a suit to recover damages for breach of the contract. The court in that case said:

"We come now to objections which the Circuit Court sustained. The learned judge held the contract inoperative, because by it the city agreed to pay for the work to be done, and the contractors agreed to receive in payment, at par, bonds of the city, denominated 'Galveston city bonds for sidewalk improvement.' These bonds were, by the ordinance that authorized their issue,

made payable to bearer 15 years after date; and the money realized from assessment on property fronting on sidewalks improved by means of their disposition was declared to be a special fund, and appropriated solely as a sinking fund for their redemption. The issue of such bonds was held by the court to be transgressive of the power of the city, and the ruling was thought to be supported by the decision of this court in the cases of Police Jury v. Britton, 15 Wall. 566, 21 L. Ed. 251, and Mayor v. Ray, 19 Wall. 468, 22 L. Ed. 164. In the view which we shall take of the present case, it is perhaps not necessary to inquire whether those cases justify the court's conclusion; for, if it were conceded that the city had no lawful authority to issue the bonds, described in the ordinance and mentioned in the contract, it does not follow that the contract was wholly illegal and void, or that the plaintiffs have no rights under it. * * * It matters not that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law. The contract between the parties is in force, so far as it is lawful."

So in the present case, if the irrigation district sold the bonds in a manner unauthorized by statute the contractor could, if the validity of the bonds had been questioned in time, have recovered on his contract, in the event the bonds were held invalid because of the manner in which they were sold. But, instead of raising the question of the validity of the bonds promptly, as the district or any taxpayer therein had the right to do, both the corporation and all of the taxpayers, with full knowledge of the facts, recognized these bonds as valid obligations of the district and accepted the benefits to their lands derived from the construction of the irrigation works until several years after the rights of the contractor to sue upon the contract or to bring an action based on a quantum meruit was barred by the statute of limitations, and his right to recover at law forever lost. Furthermore, the suit to cancel the bonds was not brought for about eight years after the bonds were delivered. Therefore the cause of action, if any, arising out of the matters set out in the bill of complaint, did not accrue within four years before the bill was filed, and, if the case was at law, would be barred by the statute of limitations of Nebraska. For eight years the district and the taxpayers accepted the benefits of the contract for which these bonds were given in payment, and there is not a single allegation in the bill nor a particle of proof introduced in their behalf tending to show that there were any impediments to an earlier prosecution of a suit to test the validity of the bonds.

[2] We think it is the general rule that courts of equity in cases of concurrent jurisdiction usually consider themselves bound by the statute of limitations which governs courts of law in like cases, and this rather in obedience to the statute of limitations than by analogy, while in many other cases they act upon the analogy of the statute of limitations at law. For example, where a legal title in ejectment would be barred by adverse possession, courts of equity will act upon the like limitations and apply it to all cases of relief sought upon equitable titles or claims touching real estate. To this general rule there necessarily exist some exceptions. For instance, in cases of concealed fraud, time, it has been decided, is no bar to an established trust provided the injured party is not guilty of undue laches subsequent to its discovery. But those cases it is almost uniformly held

do not change or modify the rule that where a party has been guilty of such laches in prosecuting his equitable remedy as would bar him, if his right was solely at law, he will be barred in equity, and this rule, under the facts disclosed by the record, must, we think, be applied in this case. As the defense of the statute of limitations, which we feel bound to sustain, applies to both contracts, we have not deemed it necessary to refer to them separately. The complainant in the court below certainly stands in no better position than the Irrigation District, and the bar of the statute applies to him as well as to the Irrigation District.

With all due regard for the views expressed by the learned judge who tried this case, we are constrained to hold that the suit ought not to be maintained. It follows, therefore, that the decree must be reversed, with instructions to enter a decree dismissing the bill.