(May 23, 1914.)

## JAMES PAGE, Appellant, v. ONEIDA IRRIGATION DISTRICT, a Corporation, Respondent.

[141 Pac. 238.]

TAXPAYER ESTOPPED—IRREGULARITY IN BOND ISSUE—VOID BOND ISSUE.
  1. Where it is shown that a land owner within an irrigation district seeks to avoid the payment of assessments levied against his land by the district because of alleged irregularities or infirmities in the issue of bonds, and who, with full knowledge of such alleged defects or infirmities, has, by his silence, acquiesced in the expenditure of the fund derived from the sale of said bonds, and who has had knowledge that said bonds were passing into the hands of *bona fide* purchasers, *held*, that he will be estopped by his laches from being heard to object to the payment of such assessments.
  2. A taxpayer may, by his conduct, be estopped from questioning the validity of municipal bonds because of alleged irregularities or infirmities in their issue.

APPEAL from the District Court of the Fifth Judicial District for the County of Franklin. Hon. Alfred Budge, Judge.

Action to have declared void certain liens and encumbrances created by assessments levied by an irrigation district, and to have determined the nature and amount of such liens as were legally created, and for the purpose of enjoining respondent from creating or attempting to create other or additional liens or encumbrances by levying future assessments. Judgment for defendant. *Affirmed.*

W. A. Lee and W. H. Wilkins, for Appellant, cite no authorities on points decided.

Richards & Haga, for Respondent.

"A taxpayer is barred by laches from enjoining the collection of a tax where he has stood by and permitted large numbers of taxpayers to pay such taxes." (*Kennedy v. Montgomery County,* 98 Tenn. 165, 38 S. W. 1075; Abbot, Public

Securities, sec. 62; *Schnell v. City of Rock Island,* 232 Ill. 89, 83 N. E. 462, 14 L. R. A., N. S., 874.)

"There is estoppel where the validity of bonds has been recognized by duly authorized public officials whereby the corporation has evidenced by its course of conduct that existing outstanding securities are valid obligations." (*Amey v. Mayor of Allegheny,* 24 How. (U. S.) 364, 16 L. ed. 614; Abbot, Public Securities, sec. 330.)

"The requirement of diligence and the loss of the right to invoke the arm of a court of equity in cases of laches is particularly applicable where the subject matter of the controversy is a public work." (*Penn Mutual Life Ins. Co. v. City of Austin,* 168 U. S. 685, 18 Sup. Ct. 223, 42 L. ed. 626.)

We call the court's attention to the case of *Rogers v. Thomas,* 193 Fed. 952, 113 C. C. A. 580, which is quite similar to the case at bar.

Ordinarily, the want of power to issue bonds for a given purpose may be raised as a defense to the enforcement of the bonds, but once the power to issue securities is conceded, it is not competent to defend against their collection upon the ground of fraud in their execution, or any irregularities in their delivery. (*Baxter v. Vineland Irr. Dist.,* 136 Cal. 185, 68 Pac. 601; *Leeman v. Perris Irr. Dist.,* 140 Cal. 540, 74 Pac. 24.)

WALTERS, District Judge.—The appellant, who was the plaintiff below, is a land owner within the bounds of the respondent irrigation district, said lands being subject to certain liens and encumbrances created by said irrigation district.

This action was brought by appellant for the purpose of having declared void said liens and encumbrances which had been created by assessments made by respondent irrigation district and which appellant had failed to pay; that the court determine the nature and amount of the liens, if any, which had been legally created by defendant; and for the further purpose of enjoining respondent from creating or attempting

to create other or additional liens or encumbrances by levying future assessments.

The relief asked for by plaintiff was by the trial court refused, from which judgment and the denial of a motion for new trial the plaintiff has prosecuted this appeal.

The record discloses that the defendant irrigation district was organized under and pursuant to the laws of the state of Idaho on the 3d day of May, 1902, after which it caused surveys and plans to be made and formulated for the construction of an irrigation canal system; that to defray the expenses of the construction of said canal system said district authorized and caused four separate bond issues to be executed and disposed of in the years 1902, 1905, 1906 and 1910.

It further appears that certain assessments have been levied against the land of plaintiff for the payment of interest on said bonds and for maintenance of the canal system.

The court found that in addition to the bonded debt a certain other debt was outstanding and unpaid, but that no levies of assessments or taxes have been made for the payment of the same, nor interest thereon.

The plaintiff charges (1) that a portion of said bonds was disposed of by said defendant for less than par with accrued interest; (2) that a portion of said bonds was delivered to various persons for work and labor performed for defendant district; (3) that a portion of said bonds was delivered to a certain person for which the defendant district received no consideration, and (4) that a portion of said bonds was not legally executed, in that they were not signed by the president of the defendant district.

In relation thereto the court found, and the evidence authorizes the court in so finding, (1) that a portion of said bonds was sold for their full cash value and accrued interest, but that after repeated efforts upon the part of the district to sell the bonds, they employed a broker to sell the same, paying him a commission therefor; (2) that a portion of said bonds had been delivered to contractors or others for work or labor in lieu of cash and in payment for work and labor performed and materials furnished, and that said bonds

so delivered were accepted at their full face or par value with accrued interest; (3) that certain of said bonds given to certain contractors in payment of work and labor performed and material furnished were by said contractors placed as collateral security with a certain bank for loans made and moneys advanced to said contractors; that for default in the payment of said loans said bank now claims to hold said bonds as a *bona fide* purchaser; (4) and that certain of said bonds were signed by the president of said defendant district after his term of office had expired, inasmuch as the bonds had been dated and prepared for signature at a time when said person was president aforesaid; that said signature had been affixed to said bonds at the request of the board of directors and the then president of said defendant district, and with the full knowledge, acquiescence and consent of the same.

The court found that practically all of said bonds had passed from the original purchaser directly or by means of sales through bond brokers into the hands of many and divers persons not parties to this suit, who had purchased the same in good faith for value, and without any notice or knowledge of the facts which plaintiff claims created defects and infirmities in said bonds as hereinbefore set forth.

1. From our view of the case it will be unnecessary to discuss or determine the merit or lack of merit in the objections made by plaintiff to the payment of assessments for the purpose of meeting interest on the bonds in question and maintenance charges for the operation of the canal system, inasmuch as it appears that the plaintiff in this action was a holder of land within the bounds of the irrigation district at the time of its organization in 1902 until the present time, and has ever since the completion of the defendant's canal in the year 1907 used water from the same for the irrigation of his said land and has accepted the benefits conferred by the construction of said canal system; that during all of said period of time since the issuance of the first series of bonds the plaintiff knew that all of said bonds were treated as valid obligations of the district except a

small portion of said bonds held by a local banking concern, upon which interest has not been paid by said district; that plaintiff acquiesced in the validity of said bonds and in the validity of the assessments levied to pay interest on the same, and that said plaintiff paid assessments levied upon his said lands from the year 1904 to 1908 inclusive; that plaintiff knew that a portion of said bonds, and to which he now raises objection, was being delivered to contractors for work and labor and to material men. It appears that a portion of said bonds at said time was delivered to plaintiff himself in payment of work and labor; that appellant has not paid assessments for the years 1909 to 1912, inclusive, and neither does he make tender of any sum for said purpose, although he has accepted the full benefit of the water delivered by said irrigation district. It appears that the plaintiff has stood silently by and permitted the canal system to be constructed, bonds issued and sold and assessments collected and interest paid, and has accepted all the benefit to be derived, and has never raised the objections which he now proposes until the filing of this suit in the fall of 1912, when it is plainly shown by the record that he has had full knowledge for many years past of the facts upon which he now predicates his objections.

In the light of these facts it to our mind appears that the plaintiff should be estopped from being heard in a court of equity to urge the matters by him now proposed. The appellant has been a member of the defendant irrigation dis- trict since its inception, and he has known of the efforts of the district to sell the bonds in question that it might procure funds with which to construct the canals, and has for a number of years stood by and acknowledged the validity of the bonds by accepting them for collateral and by paying interest on them for several years, and now when the system has been practically completed, and he has received the full benefit of this expenditure, he for the first time makes objection to what has been done years ago.

2. The principle of estoppel has been recognized in cases akin to this by text-writers and by many courts. In Abbot, Public Securities, sec. 162, it is said: ''The taxpayer may be

estopped from contesting the validity of a tax levy by his laches, acquiescence or other conduct which will bring him within the operation of the general principles under which the doctrine of estoppel is applied. . . . . ''

And again, at sec. 320, this same author says: ''It is a fundamental rule of equity that the courts will not permit one to sit idly by while rights are being asserted adverse to his interests without promptly acting for his protection. This doctrine is applied in favor of the *bona fide* holder of public securities and the courts have repeatedly held that where a public corporation fails to raise defenses which are open to it within a reasonable length of time, that it will thereafter be estopped by laches to question the validity of securities in the hands of *bona fide* holders in respect to irregularities and infirmities in their issue.''

In applying the doctrine of estoppel in the case of *Lent v. Tillson*, 72 Cal. 404, 14 Pac. 71, the following language is used: ''Under such circumstances, they could not remain silent, and permit the money obtained of the bondholders to be expended in the improvement of their property, and then escape liability on the plea that the officers charged with the work, who were in a sense their agents, were guilty of misconduct and fraud, which they by proper diligence could have prevented.''

It is held in *Rodgers v. Thomas*, 193 Fed. 952, 113 C. C. A. 580, that a land owner within an irrigation district was estopped from questioning the validity of the bonds of said district when it appeared that the contractor's right to maintain an action at law, to recover for his work, was barred by limitation; such holding being indicated in the following language:

''So in the present case, if the irrigation district sold the bonds in a manner unauthorized by statute, the contractor could, if the validity of the bonds had been questioned in time, have recovered on his contract, in the event the bonds were held invalid because of the manner in which they were sold. But, instead of raising the question of the validity of the bonds promptly, as the district or any taxpayer therein

had the right to do, both the corporation and all of the taxpayers, with full knowledge of the facts, recognized these bonds as valid obligations of the district and accepted the benefits to their lands derived from the construction of the irrigation works until several years after the rights of the contractor to sue upon the contract or to bring an action based on a *quantum meruit* was barred by the statute of limitations, and his right to recover at law forever lost. Furthermore, the suit to cancel the bonds was not brought for about eight years after the bonds were delivered. Therefore the cause of action, if any, arising out of the matters set out in the bill of complaint, did not accrue within four years before the bill was filed, and, if the case was at law, would be barred by the statute of limitations of Nebraska. For eight years the district and the taxpayers accepted the benefits of the contract for which the bonds were given in payment, and there is not a single allegation in the bill nor a particle of proof introduced in their behalf tending to show that there were any impediments to an earlier prosecution of a suit to test the validity of the bonds.''

To like effect is the case of *Penn Mut. Life Ins. Co. v. City of Austin*, 168 U. S. 685, 695, 18 Sup. Ct. 223, 42 L. ed. 626, wherein it is stated: ''The requirement of diligence, and the loss of the right to invoke the arm of a court of equity in case of laches, is particularly applicable where the subject matter of the controversy is a public work. In a case of this nature, where a public expenditure has been made, or a public work undertaken, and where one having full opportunity to prevent its accomplishment has stood by and seen the public work proceed, a court of equity will more readily consider laches.''

3. It should be noted that plaintiff does not question the power of the irrigation district to issue the bonds in question, nor charge that it exceeded its authority in so doing, but rests his objection to certain asserted irregularities in the manner of disposing of said bonds by the district, or irregularities in the clerical work of issuing the same; therefore, the doctrine of this case should not be confused with

that line of cases which hold that estoppel cannot be invoked against an interested party who seeks to have declared void, bonds which have been issued without warrant of law, or in excess of the power conferred upon the issuing body.

This principle last mentioned was affirmed by the supreme court of the United States in the case of *Township of East Oakland v. Skinner,* 94 U. S. 255, 24 L. ed. 125, in the following language:

"We· have held that there can be no *bona fide* holding where the statute did not in law authorize the issue of the bonds. The objection in such case goes to the point of power. There is an entire want of jurisdiction over the subject. It is not the case of an informality, an irregularity, fraud or excess of authority, in an authorized agent. Where there is a total want of authority to issue the bonds, there can be no such thing as a *bona fide* holding."

The authorities are unanimous in holding that negotiable bonds issued by a public or municipal corporation without legislative or constitutional authority are void, even in the hands of *bona fide* purchasers, as is evidenced by the following cases: *Mayor of Nashville v. Ray,* 19 Wall. (U. S.) 468, 22 L. ed. 164; *Town of South Ottawa v. Perkins,* 94 U. S. 260, 24 L. ed. 154; *County of Dallas v. MacKenzie,* 94 U. S. 660, 24 L. ed. 182; *Farmers' Loan & Trust Co. v. City of Galesburg,* 133 U. S. 156, 10 Sup. Ct. 316, 33 L. ed. 573; *Brenham v. German-American Bank,* 144 U. S. 173, 12 Sup. Ct. 559, 36 L. ed. 390; *Francis v. Howard County,* 50 Fed. 44; *Edminson v. City of Abilene,* 7 Kan. App. 305, 54 Pac. 568; *Cagwin v. Town of Hancock,* 84 N. Y. 532.

For the foregoing reasons we conclude that the judgment of the district court must be affirmed, and it is so ordered. Costs are awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.