**JUDITH BASIN LAND CO. v. FERGUS COUNTY, MONT., et al.**
No. 6391.

Circuit Court of Appeals, Ninth Circuit.
June 8, 1931.

Ralph J. Anderson, of Lewistown, Mont., and William Ryan, of Madison, Wis., for appellants.

C. E. Baker, of Lewistown, Mont., and Gunn, Rasch, Hall & Gunn, of Helena, Mont., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

The plaintiff, a Wisconsin corporation, licensed to do business in the state of Montana, and owner of certain lands in Fergus county, Mont., and mortgagee of certain other lands therein, brought this action to restrain Fergus county, its officers, etc., from applying for and securing tax deeds to lands owned by it and upon which it held mortgages; the land having been sold to the county for delinquent general taxes and special assessments of the Judith Basin irrigation district after the plaintiff had tendered and offered to pay all delinquent general taxes due to the state, county, and school districts, including interest and penalties. Plaintiff claims that the irrigation district assessments are illegal and void for irregularity and want of power in the officers of the district to levy taxes and issue the irrigation district bonds, and also contends that certain validating statutes of the state of Montana (post), as construed by the Supreme Court of Montana, declaring said irrigation district bonds to be valid, operated to deprive plaintiff of its property without due process of law in violation of the Fourteenth Amendment to the Constitution. From an order dismissing the complaint, this appeal is prosecuted.

The appellees claim that appellant is estopped by acquiescence and laches and that, in any event, the validating statutes are conclusive as to validity. The power to tax within constitutional limitations is inherent in the state (Kelly v. Allen, 49 F.(2d) 876, decided by this court May 18, 1931); and this includes special taxes for public benefit. The legality of the irrigation district is not challenged. The proceeds of the bonds were devoted to the public purpose designated. The plaintiff had notice of the confirmation hearing provided by statute; of the progress of the work of development, and full opportunity, if illegal, to prevent its accomplishment. Inasmuch as it was silent for more than nine years and failed to speak when it should have spoken, the arm of the chancellor may justly be reluctant to move. It is not sufficient for appellant to say that it stood by and did not pay the tax after the issuance of the bonds and expenditure of the proceeds for public benefit accruing to it in common with others. It was its duty to act and not wait until the final step to divest title after all benefits had been received. Penn Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 18 S. Ct. 223, 42 L. Ed. 626; Shepard v. Barron, 194 U. S. 553, 24 S. Ct. 737, 48 L. Ed. 1115; Hays v. Port of Seattle, 251 U. S. 233, 40 S. Ct. 125, 64 L. Ed. 243; Rodgers v. Thomas (C. C. A.) 193 F. 952; Tomich v. Union Trust Co. (C. C. A.) 31 F.(2d) 515; Page v. Oneida Irr. Dist., 26 Idaho, 108, 141 P. 238.

The court is of opinion that the validating statutes of the state are conclusive. The Legislature of a state may ratify any act that it could have authorized. Charlotte Harbor & N. R. Co. v. Welles, 260 U. S. 8, 43 S. Ct. 3, 67 L. Ed. 100. And it is not enough to say that the bonds were invalid because issued at a place not authorized, or in the absence of a proper petition. The purpose of the statutes was to validate invalid bonds. Read v. Plattsmouth, 107 U. S. 568, 2 S. Ct. 208, 27 L. Ed. 414. The bonds were issued for a proper municipal purpose, and the proceeds were properly applied to the purpose. Irregularity in issuance and excess of, or departure from, statutory authority by administrative or executive officers, are matters within the province of the Legislature to remedy. The Legislature is the source of power, the fountain head of authority. As said by the Supreme Court in Otoe County v. Baldwin, 111 U. S. 1, 4 S. Ct. 265, 273, 28 L. Ed. 331: "The doctrine is well settled in this court that the legislature of a state, unless restrained by its organic law, has the right to authorize a municipal corporation to issue bonds in aid of a railroad, and to levy a tax to pay the bonds and the interest on them, with or without a popular vote, and to cure, by a retrospective act, irregularities in the exercise of the power conferred."

In the instant case there is no state constitutional limitation withholding legislative power of any of the acts complained of. The Legislature could, in the first instance, have

authorized the issuance of the bonds without a petition of the landowners and the sale thereof at the price obtained, or established the office of the district at the place where located, or elsewhere outside of the district. Baltes v. Farmers' Irr. Dist., 60 Neb. 310, 83 N. W. 83.

In Peery v. City of Los Angeles, 187 Cal. 753, 203 P. 992, 19 A. L. R. 1044, a constitutional provision limited the legislative power with relation to the sale of the bonds at not less than a fixed amount. And the same relation obtains in Wallace v. Ball, 205 Ala. 623, 88 So. 442.

Nor is a state statute validating municipal bonds inhibited by the Federal Constitution. Rogers v. Burlington, 70 U. S. (3 Wall.) 654, 663, 18 L. Ed. 79; Thompson v. Perrine, 103 U. S. 806, 26 L. Ed. 612. See, also, Gray on Limitations of Taxing Power and Public Indebtedness, p. 620.

Section 72 of chapter 153, Laws of Montana 1921, provides: "And where districts have heretofore been organized, or bonds authorized, issued or sold or any proceedings have been undertaken on the theory that under the laws as they then existed, assessments might be assessed, levied or collected, such organization, authorization, issuance or sale of bonds and any and all such proceedings are hereby validated, cured and confirmed."

Section 2 of chapter 54, Laws of Montana 1923, provides: "All districts heretofore established by order of the court and having a de facto existence of at least one year, * * * and all acts and proceedings of any such district and of its board of commissioners leading up to the authorization, issuance or sale of bonds or the proposed issuance or sale of bonds, are hereby legalized, ratified, confirmed and declared valid to all intents and purposes, and all such bonds whether sold heretofore or hereafter are hereby legalized and declared to be valid and legal obligations of and against the irrigation district so issuing and selling the same."

These are the validating statutes which have been attacked. A more specific and all-inclusive ratification can scarcely be conceived.

In State v. Board of Com'rs of Fergus County, 86 Mont. 595, 285 P. 932, 935, the court said: "Among other irregularities in the issuance of the bonds, and one on which the respondents principally rely is that the judgment of the court authorizing and confirming the bonds to be issued, and the assessment or tax for their payment with interest,

was never entered in the minutes of the court It is also urged that the place of meetings of the irrigation commissioners was not held within the confines of the district, although it was within the county, and that the bonds were in fact sold for less than ninety per cent. of their par value. These are all objections capable of being cured by validating enactments."

Courts of the United States take judicial notice of the laws of any state, whether depending on state statutes or judicial decisions. Lamar v. Micou, 114 U. S. 218, 5 S. Ct. 857, 29 L. Ed. 94. See, also, Atlantic Fruit Co. v. Red Cross Line (C. C. A.) 5 F. (2d) 218. Federal courts for many years have expressed concurrence in the general current of opinion upon state statutes in the state court.

The further contention of appellant, that the validation laws as construed by the state Supreme Court in Cosman v. Chestnut Valley Irr. Dist., 74 Mont. 111, 238 P. 879, 40 A. L. R. 1344, are violative of the Fourteenth Amendment, is without merit. There the court said (page 117 of 74 Mont., 238 P. 879, 881): "An irrigation district is in the nature of a special improvement district, and, of course, has no authority to levy general taxes, its power in that regard being limited to what is known as special assessments. A special assessment is in the nature of a tax upon property levied according to benefits conferred on the property. * * * The justification and authority for levying special assessments is derived from the benefits which the expenditure of the tax or assessment confers on the owners of the lands in the special assessment district, and a tax out of all proportion to the benefits conferred could not be sustained."

And this was affirmed by the same court in State v. Board of Com'rs of Cascade County, 296 P. 1, 14.

While taxes are assessed for the common good, special assessments are for benefits to land equal to the assessment in a district common to all. The value of the land in the irrigation district and the bond issue and assessment and benefits must be considered as of the time when authorized and made. Appellant may not speculate upon public benefits; and, having stood by and taken advantage thereof for ten years and permitted assessments and taxes to become delinquent, because of accumulated taxes, assessments, and interest upon the bonded indebtedness, it cannot claim that "now" the assessments are out

of proportion to the value of its land. The assessment must be itself illegal when made. The scheme of assessment and the equalities which are provided are the determining factors. In Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112, 176, 17 S. Ct. 56, 70, 41 L. Ed. 369, the Supreme Court said: "It is one of those matters of detail in arriving at the proper and fair amount and proportion of the tax that is to be levied on the land with regard to the benefits it has received, which is open to the discretion of the state legislature, and with which this court ought to have nothing to do. The way of arriving at the amount may be in some instances inequitable and unequal, but that is far from rising to the level of a constitutional problem, and far from a case of taking property without due process of law."

No claim of unequal assessment is made. There is no claim that the special assessment when made was not equal in amount and benefit received.

Affirmed.