CHURCH, PLAINTIFF, v. LINCOLN COUNTY ET AL., DEFEND-ANTS.

(No. 7,450.)

(Submitted June 11, 1935. Decided June 22, 1935.)

[46 Pac. (2d) 681.]

*Mr. Thomas W. Bonner*, for Plaintiff, submitted a brief and argued the cause orally.

*Mr. Raymond T. Nagle*, Attorney General, *Mr. Charles J. Dousman*, Assistant Attorney General, and *Mr. Marshall Murray*, County Attorney of Lincoln County, for Defendants, submitted a brief; *Mr. Murray* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original proceeding brought by a taxpayer of Lincoln county who seeks to enjoin the county and the officials named as codefendants from issuing or selling $75,000 in courthouse bonds. A detailed transcript of the proceedings is made "Exhibit 4" of a stipulation between the parties by which it is agreed that such exhibit "shall be all the papers and facts of said action except those additional matters admitted by the pleadings."

Proceeding under the provisions of Chapter 24 of the Extraordinary Session of 1933–1934, the board of county commissioners at the regular session of October 1, 1934, called a special meeting of the board to be held on the thirteenth day of October, 1934, for the purpose of adopting a resolution submitting the proposal of the bond issue to the qualified voters of the county. The board met October 13 pursuant to the call and duly adopted the resolution submitting the bonding proposition to the voters. Among other things, the resolution contained in substance the following: Shall the board be authorized to expend $75,000 for the erection of a Lincoln county courthouse; shall the board be

authorized to issue $75,000 in bonds "to construct such court-house to run for 20 years"; provision was made to submit the proposition to the voters whose names appeared on the last assessment roll of the county; judges were appointed and the election was directed to be held at the general election on November 6, 1934. Notices were posted and the statutory procedure was followed in a general way. The form of ballot used was as follows: "For the issuing and sale of bonds of Lincoln county, Montana, in the sum of seventy-five thousand and no-100 dollars ($75,000.00), bearing interest at the rate of four per cent. (4%) per annum, payable semiannually, from their date to be repaid upon the amortization plan extending over a period of twenty (20) years, for the purpose of paying for the construction of a new Court House for Lincoln county, Montana." Following this recital of the form of ballot was a paragraph in the same wording as the above except the word "against" was substituted for the word "for" at the beginning of the form recited above.

November 9 the board met as a canvassing board and canvassed the returns. Its report shows the vote on the bond issue by precincts. The total vote for the bonds was 744 and 700 against. The proposition in favor of issuing bonds was declared carried. At the regular meeting of December 3, 1934, the board recited the various steps leading up to the election and found that 1,796 electors were qualified to vote on the bond issue, that 1,444 had voted, and that a majority of the votes cast were in favor of issuing the bonds. Thereupon a resolution was adopted directing that such bonds be issued. The provisions that the resolution specified the bonds should contain were in substantial compliance with the former resolution calling the bond election, the notice of election, and the form of ballot. Notice of sale was directed to be made in a local newspaper and also in a New York City newspaper. February 4, 1935, was fixed as the date bids would be opened. It developed at the meeting on that date that the notices of sale published specified June 15, 1934, as the date the bonds should bear, while the resolution of the board had directed bonds be issued bearing date of January 15, 1935.

No bid for the bonds was received. A special meeting was called for February 16, 1935, to take such action as should be found to be necessary to remedy this and other irregularities. At the meeting of February 16, 1935, a resolution was adopted recounting the various steps taken in the proceedings and it was then proposed that $60,000 of the bonds be noticed for sale to be sold March 16, 1935, and the balance of $15,000 at some later date to be fixed by the board. New notices were given of the sale in accordance with the amended resolution adopted.

It appears from the transcript that no reference was made in any of the original proceedings that Lincoln county expected to obtain from the federal government 30 per cent. of the cost of construction of the courthouse through the National Industrial Recovery Act (sec. 203 [40 U. S. C. A., sec. 403]), but in the amended resolution of February 16 that phase of the matter was set forth in detail.

The complaint alleges numerous irregularities in the proceedings in addition to the above and attacks many of the acts of the officials for lack of conformity with statutory requirements. Particular emphasis is placed upon the fact that the form of ballot was not that prescribed by statute; that it was misleading and false; that no sufficient information was conveyed to the voters either by the resolution or notice of election or the ballot and that nothing was said about what portion Lincoln county would have to pay toward the construction of the courthouse, nor what part the federal government would contribute; that the resolution was further defective in that it specified amortization bonds only and no provision was made for serial bonds.

The answer admits some of the allegations of the complaint, but denies many others. Defendants contend that the proceedings were in substantial compliance with the provisions of Chapter 24, supra, and that such irregularities as existed are remedied by the curative Act, Chapter 99 of the 1935 session.

We do not deem it necessary to dwell at length or in detail upon the numerous irregularities pointed out by the plaintiff. The only constitutional inhibition upon counties in the procedure preparatory to issuing bonds is that in section 5, Article

XIII, where it is provided that "no county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof, voting at an election to be provided by law." All other regulatory measures governing the procedure precedent to issuing bonds by a county are left to the judgment and discretion of the legislature.

If it were not for the above provision of the Constitution, it would be within the power of the legislature to authorize counties to issue bonds without any election. (*Otoe County* v. *Baldwin*, 111 U. S. 1, 4 Sup. Ct. 265, 28 L. Ed. 331.) Counties are subdivisions of the state. (*Stange* v. *Esval*, 67 Mont. 301, 215 Pac. 807; *Majors* v. *County of Lewis and Clark*, 60 Mont. 608, 201 Pac. 268; *Edwards* v. *County of Lewis and Clark*, 53 Mont. 359, 165 Pac. 297; *Hersey* v. *Neilson*, 47 Mont. 132, 131 Pac. 30, Ann. Cas. 1914C, 963; *Independent Publishing Co.* v. *County of Lewis & Clarke*, 30 Mont. 83, 75 Pac. 860.)

The Legislative Assembly in its representative capacity is the sovereign power of a state; the counties being subdivisions of the state are state agencies and it is well settled that "the legislature of a state may ratify any Act of a municipal corporation which it could have authorized." (*Commonwealth Public Service Co.* v. *City of Deer Lodge*, 96 Mont. 48, 29 Pac. (2d) 667, 670, and cases cited; *Otoe County* v. *Baldwin*, supra; *St. Joseph Township* v. *Rogers*, 16 Wall. 644, 666, 21 L. Ed. 328; *Anderson* v. *Santa Anna Twp.*, 116 U. S. 356, 6 Sup. Ct. 413, 417, 29 L. Ed. 633; *Jasper County* v. *Ballou*, 103 U. S. 745, 26 L. Ed. 422; 2 Dillon on Municipal Corporations, 5th ed., sec. 948; *Judith Basin Land Co.* v. *Fergus County*, (C. C. A.) 50 Fed. (2d) 792.) Counties are not, strictly speaking, municipal corporations, but in relation to the question involved here, they are subject to like legislative control. In *Anderson* v. *Santa Anna Twp.*, supra, Justice Harlan, delivering the opinion of the court, said: "Since what was done in this case by the constitutional majority of qualified electors and by the board of supervisors of the county would have been legal and binding upon the county, had it been done under legislative authority

previously conferred, it is not perceived why subsequent legislative ratification is not, in the absence of constitutional restrictions upon such legislation, equivalent to original authority.''

Defendants contend that all irregularities in the proceedings were cured by Chapter 99, supra. That part of the Chapter pertinent here is section 3 and is as follows: ''Each and every election heretofore held by any public body for the purpose of incurring any indebtedness or liability in any manner, or for any purpose, at which at least a majority of the qualified electors of such public body voting at such election assented to the creation of indebtedness or the issuance of bonds to finance any work, undertaking or project in aid of the financing of which the United States of America, through the Federal Emergency Administrator of Public Works, has heretofore allotted, made, or agreed to make, or shall hereafter allot, make, or agree to make, a loan or grant or both, is hereby validated, ratified, approved and confirmed, notwithstanding any error, defect, omission, or irregularity in the notice or conduct of such election, the registration therefor, or any of the statutory proceedings relating thereto; and the bonds issued pursuant to such election shall be valid, legal, binding and enforceable obligations of the issuing public body.''

It is contended by the plaintiff that the form of ballot used was misleading and false. As this goes to the election—the only constitutional question involved—we deem it well to refer to it specially. While the form is not in strict compliance with that prescribed by statute, the Constitution simply requires that an election be held leaving the details of the election, including the form of ballot, to be provided by the legislature. As the power to prescribe the form in the first instance was in the legislature, it had the power to ratify an election where the form of ballot used was other than that prescribed. We think the ballot was sufficient to advise the electorate of what grant of authority the board asked at their hands. In our opinion all the irregularities pointed out are such as the Legislative Assembly has the power to remedy by ratification and which were remedied in the

244

case at bar by the curative Act, Chapter 99, above referred to.

The writ is denied.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.