Argued May 17; affirmed June 20, 1950

STATE ex rel LUCKEY v. JAMES et al.

219 P. (2d) 756

C. E. *Luckey* argued the cause for appellant. With him on the brief was Douglas R. Spencer, both of Eugene.

*William S. Fort* argued the cause for respondents. On the brief were Husband, Fort & Johnson, of Eugene.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN, HAY and LATOURETTE, Justices.

LATOURETTE, J.

This is an appeal from a judgment in a proceeding in the nature of quo warranto brought to determine the rights of the defendants to exercise the duties of directors of Willamalane Park and Recreation District; to determine the validity of the act or acts of the incorporation of said alleged district; and, to determine the validity of the bond election called and held by the said defendants on August 31, 1948.

Defendants joined issue and set out, among other things, all the steps leading up to the organization of the Willamalane Park and Recreation District pursuant to Ch. 327, Or. Laws, 1941, and the events occurring thereafter relating to the matters in contro-

versy. The answer of the defendants was challenged by demurrer of the plaintiff, which demurrer was overruled. Plaintiff stood on the demurrer, and a judgment was entered validating the organization of said recreation district, upholding the authority of the defendants as directors of said district and legalizing the bond election held on August 31, 1948.

It appears in the record that a portion of the city of Springfield is included within the boundaries of the Willamalane Park and Recreation District as organized, and it is contended by the plaintiff that the legislature was without authority to enact Ch. 327, Or. Laws, 1941, which permits the inclusion of all or part of a municipality in a newly created park and recreation district, citing *Priest v. James et al,* 125 Or. 72, 265 P. 1092; *State ex rel. v. Chandler et al,* 180 Or. 28, 175 P. (2d) 448. The case of *Priest v. James,* supra, involved the validity of superimposing one port district on another existing and functioning port district. In *State v. Chandler,* supra, this court held that the water district in that case could not include cities because there was a lack of legislative intent in the statute involved.

It appears that the legislature in 1893 granted a charter to the town of Springfield in Lane county, Oregon. There is no express provision in the charter authorizing the town to create or acquire a park inside the city limits.

■ However this may be, it is provided by § 95-1703, O. C. L. A., that a city such as the city of Springfield is empowered by a vote of the people to create a park commission, which has the authority, among other things, to lay out and improve a park or parks and which shall have full and exclusive control of all parks within or connected with their respective cities. There-

fore, irrespective of the lack of the authority by its charter of the city of Springfield to lay out a park, Springfield would have ample authority to create a park pursuant to the above mentioned section. *City of Grants Pass v. Rogue River Public Service Corp.*, 87 Or. 637, 642, 171 P. 400. As stated before, Springfield has no park, and whether one will ever be created by a vote of the people is speculative.

It is provided by Ch. 327, Or. Laws, 1941, as follows:

> "When any part of the proposed district is within the limits of any city or town, said petition shall be accompanied by a certified copy of a resolution of the governing body of said city or town, approving of the formation of said district."

It appears that Springfield passed such a resolution, and a certified copy of the same accompanied the petition for the formation of the recreation district.

■ We are now confronted with two statutory enactments, one giving cities the right to create parks and the other giving recreation districts the right to embrace a city or a portion of it within the recreation district, the first of which Springfield has not availed itself of, and the second by which the city of Springfield, or a portion thereof, has been included within the recreation district with the approval of Springfield. The legislature having full authority over these matters had the power to enact the latter law authorizing recreation districts to include municipalities, and, so far as the present case is concerned, there is no violation of the rule against superimposing one municipality on another. We hold that the inclusion of the city of Springfield in the above recreation district was valid and not unlawful. See *Shaw v. Harris,* 54 Or. 424, 103 P. 777; *State ex rel. v. Chandler et al,* supra.

Plaintiff challenged the legality of the formation, and of subsequent acts, of the district on the following grounds: (1) that the date of the election fixed by the county court fell three days short of the time required by Ch. 327, Or. Laws, 1941; (2) that "ballots at an election on the issue of bonding the District specified purposes of the submitted bond issue, but failed to give the voters of the District any guide as to the amount of the obligation which might be incurred. It is submitted that therefore the ballots are subject to judicial scrutiny for failure to indicate to the voter the amount or millage of indebtedness to be incurred."; (3) that there are irregularities in the establishment of the board of directors of said district in that on October 6, 1947, the board purported to increase the number of directors from three to five.

Defendants urge that all of the matters hereinbefore raised by plaintiff were cured by Ch. 163, Or. Laws 1949, the title of which is, "Relating to and providing for the ratification, validation and confirmation of certain proceedings heretofore taken by and in the formation of park and recreation districts, and declaring an emergency." The first section of the act validated, ratified, authorized, approved and confirmed the organization of any park and recreation district organized pursuant to Ch. 327, Or. Laws, 1941. The second section ratified, validated and confirmed the enlarging of any park and recreation board from three to five members. The third section validated, ratified, confirmed and approved all proceedings theretofore taken in the authorization and issuance of bonds by any park and recreation district.

The curative statute, although general in character, obviously was passed to cure every defect and ir-

regularity of which the plaintiff complains in this case.

Plaintiff says:

"It is submitted that the curative act is not sufficient to obviate the irregularities complained of because:

"(1) The statute under which the District was incorporated appears to permit an unconstitutional duplication of powers in the same area, and

"(2) Appears to be retroactive in character so as to affect the rights of taxpayers and property holders, and the right of the State, if the curative act be valid, to attack a purported municipal corporation otherwise void *ab initio*. The legislature having no power to do indirectly what it is prevented from doing directly, and

"(3) Appears objectionable as special legislation."

We have the anomalous situation in the instant case of the State of Oregon, through its district attorney, contending that the State of Oregon, through its legislature, has proceeded unconstitutionally in the enactment of a curative statute; however, since a bond election is involved, we deem it important and proper to reach a decision on the merits.

Point No. 1 above set out has been disposed of in our holding that there has been no duplication of powers in permitting the district to include the city of Springfield.

In regard to Point No. 2 above, it has been held by this court in *Stanley v. Smith*, 15 Or. 505, 510, as follows:

"The rule as to curative statutes in such cases seems to be this: 'If the thing wanting or which failed to be done, and which constitutes the defect

in the proceedings, is something, the necessity for which the legislature might have dispensed with by a prior statute, then it is not beyond the power of the legislature to dispense with it by a subsequent statute. And if the irregularity consists in doing some act which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.' (Cooley on Constitutional Limitation, 371). Such legislation is sustained by numerous authorities.''

See *Nottage v. City of Portland,* 35 Or. 539, 58 P. 883; *Ayers et al v. Lund,* 49 Or. 303, 89 P. 806; *Brown v. Silverton,* 97 Or. 441, 190 P. 971; 25 A. L. R. 1128; Sutherland, Statutory Construction (3d ed.), §§ 2214 and 2217.

In the case of *Brown v. Silverton,* supra, Mr. Justice HARRIS, in treating retrospective legislation, got to the core of the matter in the following language:

''In brief, the legislature may ratify and cure through reassessment that which it might have constitutionally and lawfully authorized in the first instance. The power to validate a tax or assessment rendered invalid by errors or omissions is an essential attribute of the power vested in the legislature in its control over the sovereign power of taxation, and is necessarily without limit except as restricted or limited by the Constitution, in cases where the legislature could originally authorize the tax or assessment, although it cannot validate retrospectively what it could not originally have authorized. If a jurisdictional act is a 'dispensable act' within the meaning of those words as here used, the rule, subject to certain possible exceptions, is that the legislature can cure a defect, which has resulted from failure to do a dispensable jurisdictional act, by providing for a reassessment.''

In the case of *Comanche County v. Lewis,* 133 U. S. 198, 33 L. Ed. 604, 606, 10 Sup. Ct. 286, a case involving the matter of curative statutes, our highest court held:

> "The ample power delegated by the Constitution to the Legislature enabled it not only to organize a county in any manner it saw fit, but also to validate by recognition any organization already existing, no matter how fraudulent the proceedings therefore had been. * * * It is universally affirmed that when a Legislature has full power to create corporations, its Act recognizing as valid a *de facto* corporation, whether private or municipal, operates to cure all defects in steps leading up to the organization and makes a *de jure* out of what before was only a *de facto* corporation. It is true that there must be a *de facto* organization upon which this recognition may act, as was held in State v. Ford County, 12 Kan. 446; and in this case it appears from the findings, as well as from the testimony, that there was such *de facto* organization. There being this *de facto* organization, there was ample recognition by the Legislature."

The evidence discloses that the district in the instant case had been a de facto corporation from the date of its organization in 1944 up to the date of the passage of the curative act.

■ Referring to Point No. 3 above, it is argued that § 2 of the curative statute, which validates the enlarging of a recreation district board from three to five members, is invalid as special legislation in that it violates Art. I, § 20 of the Constitution of Oregon and the fourteenth amendment to the Constitution of the United States. It has been held by this court that a corporation is not a citizen within the meaning of such constitutional provisions. See *Corporation of Sisters of Mercy v. Lane County,* 123 Or. 144, 261 P. 694, and the cases cited therein.

■ If the legislature has the power by curative act to validate the organization of a park and recreation district, by the same reasoning it has the power to validate irregularities in bond election procedures. See *Church v. Lincoln County et al,* 100 Mont. 238, 46 P. (2d) 681.

The decree of the lower court is affirmed, without costs or disbursements.