W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

KEYSTONE READERS SERVICE, INC., a corporation, and Gary Waechter, d/b/a Ben Franklin Reading Club, Defendants.

Civ. No. 67–74.

United States District Court
S. D. Florida.

April 1, 1968.

James H. Woodson, Dept. of Labor, Atlanta, for plaintiff.

Alan Douglas Greene, Miami, Florida, for defendant.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

FULTON, Chief Judge.

The plaintiff, Secretary of Labor, seeks to enjoin the defendant, Gary Waechter, doing business as Ben Franklin Reading Club, from violating the provisions of Sections 15(a) (2), (4) and (5) of the Fair Labor Standards Act of 1938, as amended. The plaintiff's complaint alleges violations of the minimum wage, record-keeping and child labor provisions of the Act during the period from January 16, 1964, to date with respect to defendant's employment of "student salesmen." Exemption from said requirements is claimed by the defendant on the alternative grounds that these so-called "student salesmen" are "outside salesmen," or because defendant's business is a "retail service establishment."

This cause was tried before the Court without a jury, at which time the Court heard testimony of witnesses and received evidence. The Court having considered this testimony and evidence, together with the stipulations and memoranda of law submitted by the parties, makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The defendant, Gary Waechter, resides in Hallandale, Florida, and since January 16, 1964, has conducted business as Ben Franklin Reading Club; this business sells magazine subscriptions on an installment basis and processes, collects and services such subscription sales.

2. The employer's gross receipts for each year since January 16, 1964 have been less than $250,000.

3. The defendant Waechter actively manages, supervises and directs the affairs and operations of Ben Franklin Reading Club and has done so at all times since January 16, 1964. Hence the term "employer" shall hereinafter be used to include both Waechter and Ben Franklin Reading Club.

4. The employer does maintain, and has maintained since January 16, 1964, an office on N.E. 19th Avenue in North Miami Beach, Florida. An additional office was maintained by employer during part of 1965 and 1966 at 775 N.E. 79 Street, Miami, Florida.

5. Since January 16, 1964, the employer's magazine sales operations have been conducted pursuant to a Local Franchise Agreement with Keystone Readers Service, Inc., which agreement authorized the employer to sell magazine subscriptions in Florida under the name of Ben Franklin Reading Club. On July 1, 1966, Keystone assigned all its rights under said agreement to John L. Glover of Atlanta, Georgia, who had a regional franchise agreement with Keystone.

6. The employer's Local Franchise Agreement with Keystone, and later Glover, provides that the employer agrees:

> To accept and forward subscriptions authorized only with the understanding that they are subject to acceptance or rejection by Keystone and publishers and to cancellation in the event of failure of the subscriber to continue payment on the contract. (Plaintiff's Exhibit 1, Local Franchise Agreement, paragraph 6(j) on page 5 thereof.)

7. The employer has employed and does employ boys of high school age as "student salesmen," who work after school and on Saturdays while school is in session, and full work-weeks during vacations.

8. In some instances defendant Waechter interviews, hires and trains these "student salesmen." Otherwise the boys are interveiwed, hired and trained under defendant Waechter's supervision. These "student salesmen" work under defendant Waechter's direction and control in soliciting subscription sales. They do

not attempt to solicit sales for other competitive magazine subscription services.

9. The employer's office has maintained and now maintains no record of the hours, either daily or weekly, that are worked by the "student salesmen." (TR 55–6)

10. The employer's "student salesmen" are paid $3.00 per order, and if they reach ten orders in a given week, they are paid $4.00 per order. If these "student salesmen" work a complete week of two hours after school, plus Saturday, they receive a "guaranteed" wage of $20.80. They are paid by checks issued by Ben Franklin Reading Club, and records of the employer's payment of these checks are maintained by the employer.

11. These "student salesmen" report daily to the employer's office. After a briefing by the employer or under his supervision, they are transported by car by "student managers" to their respective territories, where they fan out in given neighborhoods to solicit magazine subscription sales door-to-door.

At each house, the student salesman gives a memorized sales talk, which he has been taught by the employer, and attempts to have interested potential customers sign a printed "order card." This card bears the wording:

Please enter my order for magazines listed above. I am to receive all magazines by mail. AT A TOTAL COST OF 41 CENTS PER WEEK, PAYABLE MONTHLY, FOR 60 MONTHS. (Plaintiff's Exhibit 3)

No money is exchanged, for the "student salesmen" are instructed not to discuss with or accept payment from the potential customer.

12. At a designated time and place— usually at or after 7:00 P.M.—the "student salesmen" are picked up by their respective student managers and transported back to employer's office, where they turn in their signed order cards.

13. Some time thereafter, the student managers revisit each person who had signed an "order card" and at that time the student managers explain the payment plan which must be followed in order to obtain the employer's magazine subscriptions—a different payment plan than the one described on the "order card." If a customer assents to this accelerated payment plan, the student manager and the customer execute a more detailed form which is denominated a "contract."

14. The "contract form" which must be executed by the customer in the presence of the student manager bears the following language:

This contract is subject to acceptance by the Company and the Publishers.

\* \* \* \* \* \*

NO VERBAL ARRANGEMENTS RECOGNIZED (Plaintiff's Exhibit 4.)

15. The student managers submit their executed "contracts" to the employer's offices, where the "contracts" are later verified by telephone.

16. From the employer's offices, various reports reflecting new verified orders for magazines, collections on installment contracts, and checks for money collected are and have been transmitted regularly to Atlanta, Georgia. Until July 1, 1966, these reports and checks were mailed to Keystone's office in Atlanta; since that date the reports and checks have been mailed to Glover in Atlanta.

17. The employer has obtained and does obtain the subscription contract forms and various report forms described above from Keystone and Glover. Said cards and reports are in form approved by Keystone in Philadelphia. See Plaintiff's Exhibit 1, Local Franchise Agreement, paragraph 6(d) on page 4 thereof.

18. From Atlanta, the magazine orders and payments are and have been transmitted to Keystone in Philadelphia, Pennsylvania, where the orders are processed through computers. The computers reject orders which bear incorrect addresses, incorrect pricing or other errors. Any order rejected by the computers is returned to the employer, who generally corrects the error and re-submits the corrected order in the same manner.

19. From Keystone, the processed orders are transmitted to the various magazine publishers, all of whom are located outside the State of Florida.

20. All, or substantially all, of the magazines sold by the employer are and have been mailed from points outside of the State of Florida to customers in Florida.

21. During the period since January 16, 1964, the "student salesmen" employed by the employer have been paid less than the minimum wage required by Section 6 of the Act.

22. During the period since January 16, 1964, the employer has not maintained adequate and accurate records of the hours worked by the "student salesmen" employed by the employer.

23. During the period since January 16, 1964, the employer has employed "student salesmen" under the age of sixteen years, for hours in excess of those permitted by Title 29, Code of Federal Regulations, § 1500.35.

24. The employer's business is not recognized as retail sales or services in the magazine industry.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties to and the subject matter of this cause.

2. The Secretary of Labor is authorized, under Section 17 of the Act, to bring this suit to enjoin defendant from violation of the Act.

3. The defendant Waechter, doing business as Ben Franklin Reading Club, is an employer within the meaning of the Act, and as such is engaged in commerce or in the production of goods for commerce within the meaning of the Act.

4. The "student salesmen" who are employed by defendant to solicit magazine subscription sales are "employees" employed by defendant within the meaning of Section 3(e) and Section 3(g) of the Act. When work done, in its essence, follows the usual path of an employee, putting on an "independent contractor" label does not take the worker from the protection of the Act. Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

5. These "student salesmen" are engaged in commerce or in the production of goods for commerce. This is because their activities are so directly and vitally related to interstate commerce as to be in practice and legal contemplation a part thereof. Wirtz v. First State Abstract and Insurance Co., 362 F.2d 83 (8 Cir. 1966); Wirtz v. Modern Trashmoval, 323 F.2d 451, at page 457 (4 Cir. 1963).

Through the "student salesmen's," work and activities, they serve as fingers of the employer's office, transmitting the results of their activities to the employer's office. If their work is fruitful, the information they have gleaned is transformed into orders by the student managers, and is ultimately forwarded to Atlanta, and then to Philadelphia. Thus, the "student salesmen" "feed" or "support" the interstate flow of commerce. See Wirtz v. Modern Trashmoval, supra; Wirtz v Hartley's, Inc., 245 F.Supp. 101 (S.D.Fla.1965).

6. The defendant-employer has violated Sections 6 and 15(a) (2) of the Act by failing to compensate certain of his employees, who were engaged in commerce or the production of goods for commerce, namely the "student salesmen," at the minimum hourly wage of $1.25 an hour.

7. The defendant-employer has violated Sections 11(c) and 15(a) (5) of the Act by failing to adequately and accurately record the hours of his said employees.

8. The defendant-employer has violated Sections 12(c) and 15(a) (4) of the Act by employing oppressive child labor in commerce.

9. Defendant is not exempt from the minimum wage and maximum hours requirements of the Act by virtue of Section 13(a) (1) thereof because the "student salesmen" employed by defendant

are not "outside salesmen," within the meaning of said Section.

 a. An outside salesman is an employee

Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of § 3(k) of the Act; or

(2) Obtaining orders or contracts for services \* \* \* for which a consideration will be paid by the client or customer \* \* \* (Title 29, Code of Federal Regulations, § 541.501(a).

 b. However, promotion men are not exempt as "outside salesmen." Promotional work which is incidental to an employee's *own* outside sales or solicitations is exempt work. On the other hand, promotional work which is incidental to sales made, or to be made, by someone else, is not exempt work. Title 29, Code of Federal Regulations, § 541.504(a).

 c. The "student salesmen" who are employed by defendant are engaged in promotional work which is incidental to sales to be made subsequently by defendant's student managers. In effect the "student salesmen" are engaged only in obtaining a list of persons who seem receptive to the idea of purchasing magazine subscriptions—they pave the way for the student managers to subsequently take orders.

10. Defendant is not exempt from the minimum wage and maximum hours provisions of the Act by virtue of Section 13(a) (2) thereof because defendant is not a retail or service establishment within the meaning of said Section. This is so despite the fact that defendant's annual gross receipts are less than $250,000, because:

 a. More than fifty percent of the defendant's annual dollar volume of sales is not made within the State of Florida.

Cf. Interpretative Bulletin of the Code of Federal Regulations issued by the Secretary of Labor, § 779.339.

 b. Defendant's sales are not recognized as retail sales in the particular industry, for there is no concept of retail selling or servicing in the magazine industry. [Idaho Sheet Metal Works v. Wirtz 383 U.S. 190, 86 S.Ct. 737 (1966), page 745 15 L.Ed.2d 694.] In so holding, the Court deems these "student salesmen" for magazine subscription services to be analogous to newspaper boys and there is no concept of retail selling or servicing in the newspaper industry. [Idaho]; Mitchell v. Kentucky Finance Co. 359 U.S. 290, 79 S.Ct. 756 (1959), at page 759 3 L.Ed.2d 815. Where Congress intended that this type of business have an exemption, one is specifically provided by the law. See, for example, 29 U.S.C. § 213(d).

11. The plaintiff is entitled to an injunction under Section 17 of the Act to enjoin defendant from future violations of Sections 15(a) (2), (4) and (5). Goldberg v. Cockrell, 303 F.2d 811 (5 Cir. 1962); Mitchell v. Pidcock, 299 F.2d 281 (5 Cir. 1962).

Counsel for the plaintiff shall submit an appropriate Final Judgment form in accordance with the foregoing within 15 days of the entry of these Findings of Fact and Conclusions of Law.

## AMENDED FINAL JUDGMENT

This matter having come on for trial before the Court without a jury, and the Court having heard testimony of witnesses and received evidence and having considered this testimony and evidence, together with stipulations and memoranda of law submitted by the parties, and having filed its Findings of Fact and Conclusions of Law, it is therefore,

Ordered, adjudged and decreed that defendant Gary Waechter, his agents, servants, employees, attorneys, and all persons acting, or claiming to act, in his behalf and interest be, and they

hereby are, permanently enjoined and restrained from violating the provisions of Sections 15(a) (2), 15(a) (4) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.), hereinafter referred to as the Act, in any of the following respects:

1. Defendant Gary Waechter shall not, contrary to Sections 6 and 15(a) (2) of the Act, pay any of his employees engaged in commerce or in the production of goods for commerce within the meaning of the Act, wages at rates less than one dollar and sixty cents ($1.60) an hour or at a rate less than any other minimum rate which may be made applicable by amendment to the Act.

2. Defendant Gary Waechter shall not fail to make, keep and preserve adequate and accurate records of his employees and of the hours of employment maintained by him, as prescribed by the regulations of the Administrator issued, and from time to time amended, pursuant to Sections 11(c) and 15(a) (5) of the Act and found in Title 29, Chapter V, Code of Federal Regulations, Part 516.

3. Defendant Gary Waechter shall not, contrary to Sections 12(c) and 15 (a) (4) of the Act employ oppressive child labor in commerce or in the production of goods for commerce by employing minors under the age of sixteen (16) years under conditions contrary to Section 3(l) of the Act and Child Labor Regulation 3 issued pursuant thereto and found in Title 29, Code of Federal Regulations, Part 1500, and by employing minors under the age of fourteen (14) years.

It is FURTHER ORDERED that the Marshal shall serve copies of this Final Judgment upon defendant Gary Waechter.

It is FURTHER ORDERED that the costs of this action be and the same hereby are taxed against defendant Gary Waechter, for which execution may issue.