Argued and submitted May 23, 1988, affirmed April 12, reconsideration denied July 14, petition for review denied August 29, 1989 (308 Or 315)

NORTHWEST ADVANCEMENT, INC., et al,
*Appellants,*

*v.*

STATE OF OREGON,
Bureau of Labor, Wage and Hour Division,
*Respondent.*

(Marion County 85-1052; CA A41042 (Control))

STATE ex rel ROBERTS et al,
*Respondents,*

*v.*

NORTHWEST ADVANCEMENT, INC., et al,
*Appellants.*

(Multnomah County 8601-00401; CA A41109)
(Cases consolidated)

772 P2d 943

Gordon T. Carey, Jr., Portland, argued the cause and filed the briefs for appellants.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Appellants in these consolidated appeals seek review of two judgments entered in separate counties. In *Northwest Advancement v. Bureau of Labor,* the Marion County Circuit Court entered a summary judgment for the state in appellants' declaratory judgment action challenging the validity of regulations promulgated by the Oregon Wage and Hour Commission (WHC). In *State ex rel Roberts v. Northwest Advancement,* the Multnomah County Circuit Court granted the state's request for a permanent mandatory injunction requiring appellants to comply with the challenged regulations. We affirm both judgments.[1]

Appellant Northwest Advancement, Inc. (NWA), is an Oregon corporation engaged in the wholesale distribution of candy and various household products. Appellant Henke is NWA's president and sole shareholder. NWA distributes its products primarily through door-to-door sales by minors. The minors are recruited by Henke and his "crew chiefs," whom Henke himself recruits. Appellants Geer and Cox were both NWA crew chiefs and were responsible for transporting minors to and from neighborhoods where they sold NWA's products.

In 1985, WHC promulgated administrative rules regulating the employment of minors as canvassers, peddlers or outside house-to-house salesmen. Appellants NWA and Nancy Louise Mark, guardian *ad litem* for one of the minors working for NWA, filed an action in Marion County seeking a declaratory judgment that the regulations were invalid.[2]

---

[1] Appellants also challenge two final orders issued by the Bureau and WHC that imposed civil penalties for violations of the regulations and revoked their right to hire minors in the future. That administrative law review is *Northwest Advancement v. Wage and Hour Comm.,* 96 Or App 146, 772 P2d 934 (1989).

[2] At issue in these appeals are OAR 839-21-097(1)(c), which prohibits the employment of minors under 16 years of age as door-to-door salespersons; OAR 839-21-265(1)-(10), which requires employers to register with the Bureau any minors ages 16 to 18 who are employed in those capacities; OAR 839-21-265(11), which requires such minors to wear identification cards bearing certain information; OAR 839-21-265(12), which prohibits employment of such minors after 9 o'clock at night; OAR 839-21-265(13), which requires employers to provide such minors with transportation home by 9 o'clock at night; OAR 839-21-265(14), which prohibits employers from transporting such minors to another state without the written consent of their parents; and *former* OAR 839-21-107, which, at the time these actions were commenced, exempted from coverage of the other rules minors employed as newspaper carriers or newspaper vendors.

While that action was pending, the Bureau of Labor and Industries (Bureau) filed a separate action in Multnomah County seeking preliminary and mandatory injunctions requiring NWA and its crew chiefs to comply with the regulations. The Marion County Circuit Court entered a summary judgment for the state, and the Multnomah County Circuit Court granted the state's request for an injunction. Appellants challenge both judgments.

■■ Appellants first argue that the Multnomah court erred in concluding that the NWA sales operation was governed by the statutes and administrative rules relating to the employment of minors, because NWA does not "employ" minors as that term is used in ORS 653.305,[3] the enabling statute for the challenged regulations. They assert that the minors and crew chiefs are independent contractors and are, therefore, exempt from the regulations. We disagree. Although appellants and the state differ over the meaning of "employ" and "employer" as used in ORS 653.305,[4] under either party's definitions of those terms the minors in this case were employes.

ORS 653.010, which the state argues applies to ORS 653.305, defines "employ" as "suffer or permit to work," and "employer" as "any person who employs another person." Although no Oregon cases have further refined those terms, federal regulations and case law interpreting the same terms

---

[3] ORS 653.305 provides:

"(1) The commission may at any time inquire into wages or hours or conditions of labor of minors employed in any occupation in this state and determine suitable hours and conditions of labor for such minors.

"(2) When the commission has made such determination, it may issue an obligatory order in compliance with ORS 183.310 to 183.550.

"(3) After such order is effective, no employer in the occupation affected shall employ a minor for more hours or under different conditions of labor than are specified or required by the order; but no such order nor the commission shall authorize or permit the employment of any minor for more hours per day or per week than the maximum fixed by law or at times or under conditions prohibited by law."

[4] The state argues that the definitions of "employ" and "employer" contained in ORS 653.010, the language of which was taken from the federal Fair Labor Standards Act, apply to ORS 653.305. On the other hand, appellants argue that those definitions do not apply because the clause preceding ORS 653.010 begins with, "[a]s used in ORS 653.010 to 653.261 * * *." They argue instead that the common law distinction between an employe and an independant contractor should control.

under the Fair Labor Standards Act, after which most of ORS chapter 653 is patterned, are instructive. For example, 29 CFR § 570.113, relating to the definitions of "employ" and "employer" for purposes of child labor law under FLSA, states:

"The nature of an employer-employee relationship is ordinarily to be determined not solely on the basis of the contractual relationship between the parties but also in the light of all the facts and circumstances. Moreover, the terms "employer" and "employ" as used in the Act are broader than the common-law concept of employment and must be interpreted broadly in the light of the mischief to be corrected. Thus, neither the technical relationship between the parties nor the fact that the minor is unsupervised or receives no compensation is controlling in determining whether an employer-employee relationship exists * * *."

In *Wirtz v. Keystone Readers Service, Inc.*, 282 F Supp 871 (SD Fla), *aff'd* 418 F2d 249 (5th Cir 1968), the court addressed an employment scheme nearly identical to the one in this case. In *Wirtz,* a magazine distributor hired "student salesmen" to work after school and on weekends soliciting magazine subscriptions door-to-door. The principal officer and shareholder of the defendant corporation either interviewed and trained the minors himself or supervised a "student manager" who did. During the training process, the minors had to memorize a sales speech that he provided. After reporting to the defendant's office each day, the minors were transported in cars driven by "student managers" to designated neighborhoods, where they would "fan out" and solicit subscriptions. At the end of the day, the minors met the "student managers" at a designated place and then were transported back to the defendant's office. There, the minors would turn in their subscriptions and receive a commission based on the volume of sales. On those facts, the court concluded that the minors were employes for the purposes of FLSA. The court observed that "[w]hen work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act." 282 F Supp at 874. We conclude that, if the FLSA definitions of employ and employer contained in ORS 653.010 apply in this case, the minors and crew chiefs are employes.

However, even assuming that appellants are correct

in their assertion that the FLSA definitions incorporated in ORS 653.010 do not apply to ORS 653.305, and that we therefore must turn to the common law distinction between employes and independent contractors, we conclude that the minors and crew chiefs in this case were still employes. At common law, the question of whether an independent contractor relationship exists focuses primarily on whether the worker is subject to the principal's direction and control. *See, e.g., Restatement (Second) Agency,* § 2(3) (1958); *Nordling v. Johnston,* 205 Or 315, 332, 283 P2d 994 (1955). In this case, both the crew chiefs and the minors were subject to the direction and control of Henke and, therefore, of NWA. Henke interviewed and trained the minors in their sales techniques, giving them standardized sales speeches to memorize. He assigned the crew chiefs specific territories in which to operate. The minors did not choose the neighborhoods in which they sold NWA products, but rather were driven to and from areas selected by Henke and the crew chiefs. Although the crew chiefs and the minors were paid on commission and not on an hourly basis, neither was at financial risk, because they did not purchase the product in advance and were allowed to return all unsold inventory. Finally, the NWA logo was printed on all advertising materials used by the minors to promote sales. We conclude that both the minors and the crew chiefs are employes for purpose of ORS 653.305.

■■■ Appellants next argue that both courts erred in concluding that the Bureau did not exceed its authority under ORS 653.305(1) when it promulgated OAR 839-21-097(1)(c), which prohibits the employment of minors under 16 years of age as door-to-door salespersons.[5] ORS 653.305(1) provides that WHC may at any time "inquire into wages or hours or conditions of labor of minors employed in any occupation in this state and determine suitable hours and conditions of labor for such minors." Appellants argue that the statute only

_____

[5] Appellants also argue that the Bureau exceeded its authority under ORS 653.305(1) when it promulgated *former* OAR 839-21-107, which exempted from regulation minors employed as newspaper carriers or vendors. We do not consider the merits of that argument. Assuming, without deciding, that WHC's promulgation of that rule was beyond the scope of its authority, invalidating the rule would have had absolutely no effect on the outcome of this case. For the same reason, we also decline to consider the merits of appellants' attack on *former* OAR 839-21-107 as being arbitrary. Their claim that the other regulations are also arbitrary is without merit.

authorizes WHC to establish suitable hours of employment, not to prohibit employment altogether. Again, we disagree.

Appellants rely on *Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 415 P2d 21 (1966), for the proposition that a grant of power to "regulate" does not include the power to "prohibit." The holding in *Peterson,* however, is not that broad. In *Peterson,* the legislature had authorized the Board of Pharmacy to "make regulations, necessary for the protection of the public, pertaining to the practice of pharmacy" and to "[r]egulate the practice of pharmacy." *Former* ORS 689.620. Pursuant to that statute, the Board promulgated a regulation prohibiting the public advertisement of prescription drugs. The Supreme Court held that the regulation exceeded the scope of the enabling statute, because "[n]othing in ORS 689.620 or elsewhere in the same chapter suggests that advertising was contemplated as a proper subject of regulation." 244 Or at 124. The court did not, as appellants argue here, hold that the legislature's use of the term "regulate" prevents an agency from "prohibiting." Rather, the court held that the power to regulate one area, pharmacy, does not by implication include the power to regulate another area, advertising. In this case, the legislature authorized WHC to determine suitable hours of employment for minors and to promulgate rules regulating those hours. Under that delegation of authority, WHC had the ability to determine that *no* suitable hours of employment exist for certain minors in certain occupations, and to promulgate rules to that effect.[6]

Appellants next argue that both courts erred in rejecting their argument that the challenged regulations violate their rights to free speech under Article I, section 8, of the

---

[6] Appellants argue that WHC did not conduct a sufficient investigation of employment conditions before promulgating the rules under challenge. However, even assuming that an investigation is a prerequisite to WHC's authority to promulgate rules, *see Fund for Animals v. Dept. of Fish & Wildlife,* 94 Or App 211, 765 P2d 215 (1988), the investigation in this case was sufficient. As discussed below, the record indicates that WHC held a public hearing at which representatives from the Better Business Bureau, the Multnomah County District Attorney's Office and the Hillsboro Police Department discussed their experiences with minors selling door-to-door. In addition, WHC officials prepared a report detailing the extent and manner in which major Oregon newspapers use minors in their distribution process.

Appellants also assign error to the Multnomah court's decisions to close the record after the last day of hearings and to exclude testimony regarding the employment practices of newspapers. We conclude that the court did not abuse its discretion in those rulings.

Oregon Constitution and the First and Fourteenth Amendments. Under the Oregon Constitution, commercial speech is afforded the same protection as noncommercial speech. *Ackerley Communications, Inc. v. Mult. Co.,* 72 Or App 617, 696 P2d 1140 (1985), *rev dismissed,* 303 Or 165 (1987). In *City of Hillsboro v. Purcell,* 306 Or 547, 761 P2d 510 (1988), the Supreme Court held unconstitutional a city ordinance banning all door-to-door sales of goods in residential areas:

> "The relevant distinction is between outright prohibitions —either criminal or civil—on the one hand, and regulations that do not foreclose expression entirely but regulate when, where and how it can occur. Prohibiting expression by making certain speech or writing criminal, * * * or imposing an oppressive licensing procedure * * * are examples of the former. [A] zoning ordinance [regulating the location of adult bookstores] is an example of the latter. With regard to these latter regulations, even free speech activities 'are not immune from regulations imposed for reasons other than the substance of their particular message.' In either case, laws must proscribe harm rather than expression itself." 306 Or at 554. (Citations and footnote omitted.)

The court invalidated the ordinance in *Purcell* on the ground that it was overbroad under Article I, section 8:

> "The ordinance is overbroad, not because it regulates solicitation for one purpose differently from another, but because it prohibits all solicitation for any purpose at any time. The ordinance as written is broad enough to preclude any person or group from approaching a door in a residential neighborhood to solicit financial support for any purpose through the sale of merchandise. This is far more than a regulation limited to and contained by the consequences the law seeks to prevent.
>
> "* * * * *
>
> "The city impermissibly has prohibited all persons from approaching people in their homes at any time to sell merchandise. We do not suggest that the city could not place reasonable limitations on door-to-door solicitations. The city may yet choose to regulate, rather than totally proscribe, door-to-door solicitations. It has not yet done so." 306 Or at 556.

■ The challenged regulations in this case do not prohibit "all solicitation for any purpose at any time." Rather, they prohibit only door-to-door solicitation by some people

(minors under age 16) all of the time and door-to-door solicitation by other people (minors age 16 and older) some of the time. Nothing in the challenged regulations prevents adults from soliciting door-to-door at any time. Similarly, nothing in the challenged regulations prevents minors age 14 to 16 from soliciting in public places, such as shopping malls. Further, unlike the city ordinance in *Purcell,* the regulations in this case are not directed toward the content of the speech, but only toward the employment of minors. We conclude, therefore, that they do not violate Article I, section 8.

Unlike under the Oregon Constitution, commercial speech under the First Amendment to the United States Constitution is accorded less protection than noncommercial speech. *Metromedia, Inc. v. San Diego,* 453 US 490, 504-06, 101 S Ct 2882, 69 L Ed 2d 800 (1981); *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 US 557, 562-63, 100 S Ct 2343, 65 L Ed 2d 341 (1980). In *Metromedia,* the Supreme Court articulated a four-part test for determining the validity of government restrictions on commercial speech:

"(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective." 453 US at 507 (citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n, supra*).

We conclude that the challenged regulations meet that test. First, they are directed toward improving the working conditions of minors, which is a substantial governmental interest. Second, they directly advance that interest by prohibiting the employment of some minors under certain conditions and by restricting the employment of other minors under other conditions. Third, they reach no further than necessary to accomplish the governmental interest, because they permit the employment of minors 16 years of age and older as door-to-door salespersons under certain circumstances, of minors 14 to 16 years of age as salespersons in other circumstances and of adults as salespersons in all circumstances. Accordingly, we hold that the regulations do not violate appellants' rights under the First Amendment.

■ Appellants next argue that the courts erred in rejecting their argument that the challenged regulations violate their rights to equal privileges and immunities under Article I, section 20, and to equal protection under the Fourteenth Amendment. Specifically, they argue that the exemption granted to newspaper carriers and vendors constitutes impermissible class legislation. In order to succeed in their Article I, section 20, challenge, appellants must show, (1) that another group has been granted a "privilege" or "immunity" that their group has not been granted, (2) that the regulations discriminate against a "true class" on the basis of characteristics that they have apart from the regulations themselves and (3) that the distinction between classes either is impermissibly based on persons' immutable characteristics and reflects "invidious" social or political premises or has no rational foundation in light of the enabling statute's purposes.[7] *Jungen v. State of Oregon,* 94 Or App 101, 105, 764 P2d 938 (1988).

■ ■ *Former* OAR 839-21-107 provided that minors employed as newspaper carriers and newspaper vendors were not subject to the administrative regulations promulgated under ORS 653.305.[8] Exemption from regulation is clearly an immunity to which Article I, section 20, analysis applies. Thus, the first element is satisfied. In addition, newspaper carriers and vendors are a "true class" in the sense that they are identified in the regulation by characteristics which they have apart from the regulation itself, *i.e.,* the sale and distribution of a particular product. *See State v. Clark,* 291 Or 231, 240-41, 630 P2d 810, *cert den sub nom Clark v. Oregon,* 454 US 1084 (1981). Thus, the second element is also satisfied. However, the classification is not based on immutable characteristics reflecting invidious social or political premises. Any person wishing to come within the favored class of newspaper carriers and vendors may do so by engaging in that occupation. Accordingly, the first prong of the third element is not

---

[7] Respondent argues that NWA does not have standing to assert a violation of rights under Article I, section 20, because those rights extend only to "citizens" and NWA, as a corporation, is not a "citizen." *See State v. James,* 189 Or 268, 219 P2d 756 (1950); *but see Salem College & Academy, Inc. v. Emp. Div.,* 298 Or 471, 488 n 13, 695 P2d 25 (1985). Because we conclude that any rights NWA *might* have under Article I, section 20, were not violated, we need not resolve that issue. In any event, the other appellants clearly have standing to assert a violation of that constitutional provision.

[8] Minors employed "at domestic work and chores in or about private residences" were also exempted under that regulation.

present. The only remaining question, then, is whether the classification lacks a rational foundation in the light of the statute's purposes. *Jungen v. State of Oregon, supra,* 94 Or App at 105.

Appellants argue that there is no rational distinction between the distribution of newspapers and the distribution of household products or candy. The Bureau's regulation of the door-to-door sales of candy and other products is based on its determination that that particular activity by minors is sufficiently dangerous to require additional regulation. That determination is supported by the record. Bureau officials testified in these cases that, before promulgating the challenged regulations, they had received intensifying complaints from the public and from parents about young children selling products door-to-door in the Portland and Salem areas. The complaints were that the children were working very late at night, that they were sometimes abandoned far from their homes and that they were also sometimes transported to Washington without their parents' permission. The officials testified that no similar complaints were received regarding newspaper carriers or newspaper vendors.[9] In addition, the Bureau conducted a public hearing at which representatives of the Better Business Bureau, the Multnomah County District Attorney's office and the Hillsboro Police Department discussed their experiences with minors selling door-to-door. Again, no complaints about newspaper carriers or newspaper vendors were received. We conclude that the exemption of newspaper carriers and vendors in OAR 839-21-107 had a rational basis in the light of the enabling statute's purpose of promoting safe working conditions for minors.

Appellants also argue that OAR 839-21-107 violates their rights to equal protection under the Fourteenth Amendment. They assert that the challenged regulations should be subjected to strict scrutiny because they address fundamental rights to engage in commercial speech and to engage in a particular occupation. However, as discussed

---

[9] Bureau officials testified that they had received complaints about newspaper carriers and vendors "from time to time" in the past, but that the complaints that prompted the challenged regulations all involved sales of household products and candy.

*supra,* we conclude that the challenged regulations are permissibly directed at the employment of certain minors in certain occupations, not at the content of their speech. Further, a minor's right to be employed as a door-to-door salesperson during certain hours or at a certain age is not a fundamental right for purposes of the equal protection clause of the Fourteenth Amendment. *Cf. New Orleans v. Dukes,* 427 US 297, 96 S Ct 2513, 49 L Ed 2d 511 (1976) (right to be employed as a pushcart vendor is not a fundamental right). Because no fundamental interests are addressed by the challenged regulations, they need only have a rational basis to withstand Fourteenth Amendment scrutiny. We conclude that, for the same reasons stated in our analysis of Article I, section 20, the challenged regulations are rationally related to the purposes of the enabling statute.

■■■■ Appellants next argue that the Multnomah court erred in granting the state's request for a permanent mandatory injunction requiring them to comply with the challenged regulations. They argue that the Bureau does not have authority to seek injunctive relief or, in the alternative, that injunctive relief was not appropriate in this case.[10] ORS 651.050 authorizes the Commissioner to "cause to be enforced * * * all laws regulating the employment of minors [and] all laws enacted for the protection of employes." ORS 653.535 authorizes WHC to "take such steps as may be necessary to prosecute such employers as are not observing or complying with its orders." Implicit in those broad grants of authority is the ability to seek injunctive relief.

■■■■ Appellants' assertion that injunctive relief is not appropriate under the circumstances of this case is meritless. NWA was charged with 91 separate and continuing violations of the regulations, 75 of which a hearings officer held violated the regulations. Civil penalties of over $45,000 were assessed.

---

[10] Appellants also argue that injunctive relief was improper because one of the regulations that they were charged with violating is unconstitutionally vague. That regulation, OAR 839-21-265(13), provides that the return transportation of a minor shall "occur no later than 9:00 o'clock at night." They argue that, under the quoted language, it is unclear whether the transportation must *end* or *begin* by 9:00 o'clock. However, OAR 839-21-265(12) provides that minor door-to-door peddlers "shall not be employed past the hour of 9:00 o'clock at night." When read in conjunction with that regulation, the plain meaning of OAR 839-21-265(13) is clear: transportation is part of employment, and employed minors must be returned home by 9:00.

On the record before us, we agree with the Bureau that NWA's conduct was not an isolated event, but rather a pattern of misconduct affecting the minors that it employed. The remedy suggested by NWA, case-by-case enforcement of the regulations, would not only be a waste of judicial and administrative resources, but would not address the broad problem of continued child labor violations. Injunctive relief was therefore proper.

 Appellants also argue that the Marion court erred by granting a summary judgment in favor of the state and by refusing to grant their own cross-motion for summary judgment. They argue that summary judgment is inappropriate in cases involving constitutional issues and that, in any event, there were material issues of fact. Summary judgment is proper when:

> "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ORCP 47C.

In reviewing a summary judgment, the record is viewed in the light most favorable to the party opposing the motion. *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). The constitutionality of statutes or ordinances may properly be determined on summary judgment. *See Schaumburg v. Citizens for Better Environment,* 444 US 620, 100 S Ct 826, 63 L Ed 2d 73 (1980).

We conclude that summary judgment was properly granted. The material facts in the Marion County action were not in dispute. Unlike the Multnomah County action, where the issue of appellants' conduct was central, the questions presented in the Marion County action were purely legal. Accordingly, once the court had determined that appellants' constitutional challenges were meritless, the state was entitled to judgment as a matter of law.[11]

Affirmed.

---

[11] Appellants' remaining assignments of error are without merit.